[Civ. No. 5821.   Third Appellate District.—October 21, 1937.]

ELIZABETH CANNON, Respondent, v. A. R. KEMPER, Appellant.

Gerald M. Desmond and Yale S. Kroloff for Appellant.

Bradford, Cross & Prior for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment against the defendant in the sum of $2,500 for and on account of the death of her husband, occasioned by the alleged negligent driving of an automobile. From this judgment the defendant appeals.

It appears from the record that at about 3:30 A. M. on the morning of May 28, 1936, the appellant was driving a Dodge sedan automobile southerly along a certain highway in the county of Sacramento, known as and called the "Rio Linda Road". This highway extends in a northerly and southerly direction between the town of Rio Linda and the city of Sacramento. The paved portion of the highway was and is approximately 16 feet in width, having a white strip defining the center line thereof. The defendant, driving southerly, was on the westerly side of the white line, driving very closely thereto. Driving toward the city of Sacramento, the defendant was operating his automobile on the westerly side of the highway. The morning was dark and a heavy rain was falling, so that the appellant, according to his testimony, could not see more than about 25 feet ahead of him. The lights of his car were burning, the windshield wiper was being operated, and the car was equipped with four-wheel hydraulic brakes. The appellant testified that it would require about 65 feet within which he could stop his car traveling at the indicated speed. The testimony of the appellant is to the effect that he was driving at the rate of 35 miles per hour. The physical facts, however, would indicate that he was traveling somewhat in excess of that speed. The appellant was on his way to work at the headquarters of the Poultry Producers' Association in Sacramento. He was accustomed to travel this highway daily to and from his work.

While the appellant was operating his automobile on the Rio Linda road, under the circumstances which we have just stated, he came in contact with the husband of the plaintiff, William C. Cannon, who was walking northerly on the westerly edge of the highway, which would be the left-hand

side of the highway where the law requires pedestrians to walk. Thus, with Kemper driving southerly and Cannon walking northerly, both parties would be on the same side of the highway.

The cause was tried before the court, and in rendering judgment for the plaintiff the court found that the death of Cannon was caused by the negligent manner in which Kemper was operating his automobile, and that the deceased was not guilty of contributory negligence, approximately causing his death.

█ Upon this appeal the appellant presents four propositions: 1st. That the evidence was insufficient to support a finding of negligence against the appellant; 2d. That the deceased was guilty of contributory negligence; 3d. That from the facts as developed by the evidence and surrounding circumstances, the court could reasonably draw but one inference, an inference pointing unerringly to the negligence of the deceased; 4th. That there is no evidence to support the judgment in the sum of $2,500.

The facts are simple, as testified to by the appellant. His testimony is to the effect that he was driving southerly at the rate of 35 miles per hour; that a heavy rain was falling; that visibility was limited to about 25 feet; that it would require approximately 65 feet within which to stop his car; that when he saw the deceased, he swerved his car to the left; that at the same instant the deceased stepped to the right; and that the collision followed.

The physical facts show that the appellant's car was driven diagonally across the highway, came in contact with a small tree, was guided back onto the highway, or rather, along the shoulder of the highway, encountered four mail-box posts, knocked them all down, and stopped at a point indicating that the car had traveled 75 feet from the place where he applied the brakes just preceding the collision.

Upon these facts it is argued by the appellant that the court had nothing upon which to base the conclusion that the appellant was guilty of negligence. This contention, however, does not appear to us to be well taken. Section 510 of the Vehicle Code requires that no person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of the highway, and in no event at a speed

which endangers the safety of persons or property. This basic rule of law is not controlled or limited in its operation by reason of the fact that under certain conditions an automobile may be operated upon the Rio Linda highway at a speed of 45 miles per hour.

In the case of *Graybiel* v. *Auger*, 64 Cal. App. 679 [222 Pac. 635], the basic rule which we have just referred to was mentioned and held to be as much a portion of the law as that which allowed certain speeds under certain specified conditions.

In the case of *Dam* v. *Bond*, 80 Cal. App. 342 [251 Pac. 818], the same question was presented to the court, and after referring to the Auger case, it was there added: "In other words, it is not the absolute speed at which an automobile is being driven that determines whether it is or is not being propelled at a reckless rate, but the conditions and circumstances of the highway at the instant of time must be taken into consideration, and if these conditions are such that the safety of persons and property require a much lesser rate of speed, it is the duty of the driver of the motor vehicle to slow down the speed of his car."

The same rule was followed in the case of *Davis* v. *Brown*, 92 Cal. App. 20 [267 Pac. 754]. Other cases might be cited, but all the cases having to do with the subject have affirmed the basic rule in determining the question of negligence.

In view of the basic rule and the cases which we have cited, the trial court was justified in coming to the conclusion that the appellant was propelling his automobile in a grossly negligent manner at the time of the collision. When one's vision is limited to 25 feet, or thereabouts, a heavy rain falling, the highway necessarily wet and slippery, and the possibility of stopping a car requiring at least 65 feet, the propelling of a car at the rate of 35 miles per hour certainly presents a situation where the trial court was justified not only in holding that the appellant was guilty of gross negligence, but that he was driving his car without any regard to the safety of persons who might also be using the same side of the highway. Any other holding by the trial court would have been contrary to any reasonable conclusion based upon such facts. At a speed of 35 miles per hour the appellant was allowing himself only a half second within which

to discover a person upon the highway, and act so as to avoid a collision—presenting almost an impossibility.

■ Was the deceased guilty of contributory negligence approximately causing a collision? In the first place, unless the testimony directly controverts the same, the presumption that the deceased was taking due care, comes to the aid of the plaintiff in this action, and requires no further evidence to support the judgment. It is asserted, however, that the deceased, in stepping to the right toward the center of the paved portion of the highway instead of stepping to the left and off the paved portion, must be held guilty of contributory negligence.

Under the cases where visibility is clear, and the deceased has a plain, unobstructed view, and is not confronted by a sudden emergency, the holding would necessarily follow that contributory negligence was established. There is here, however, another principle involved, and that is, when one is confronted by a sudden emergency created by the unlawful act of another, the failure to act in such a manner as would conserve his own safety does not establish, in law, contributory negligence.

Under the circumstances which we have set forth, the trial court was justified in concluding that it was impossible for the deceased to correctly estimate the speed at which the defendant's car was approaching; that his own visibility was limited on account of the rain; and that the deceased also had a right to assume that no one, on such a morning, would be driving a car at a reckless rate of speed, or at a speed which was wholly disregardful of the safety of other persons upon the highway; and that the circumstances disclosed presented a situation of sudden emergency to the deceased; and that he stepped to the right instead of to the left, in the hopes that the speeding automobile would pass by without injuring his person.

Just as said in the case of *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086], and *McVea* v. *Nickols,* 105 Cal. App. 28 [286 Pac. 761]: "The deceased was walking where he had a right to walk, and the right to assume that other persons using the highway would obey the law and keep a proper lookout and avoid hitting him." Also, as said in the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027], the presumption is that the

deceased, walking on the highway, was at all times exercising the requisite degree and amount of care necessary for his own safety and preservation. This presumption, however, is subject to be controverted, but until controverted, it is evidence with which the jury or court, as the case may be, is bound to decide.

The trial court in this case, we think, had before it the question whether, under the circumstances the deceased should be held presumed to be exercising reasonable care, and that his stepping to the right was occasioned by a sudden emergency, due to the rapid approach of the automobile, or whether stepping to the right was an act of negligence contributing proximately to the accident. Any reasonable inferences to that effect drawn by the trial court would be, and are, binding upon us upon this appeal.

In view of the facts which we have set forth, and the conclusions which we think the trial court had a right to deduce therefrom as to who was responsible for the collision in this case, we deem it unnecessary to analyze or distinguish the crossing cases cited by the appellant, nor even the cases where the circumstances present to a pedestrian an unobstructed view and no sudden emergency.

A somewhat similar case was presented to this court in *Buchignoni et al.* v. *DeHaven, ante,* p. 76 [72 Pac. (2d) 159].) There, the driver was propelling his car at about 45 miles per hour, when the atmospheric conditions somewhat obscured vision, by reason of causing mist or moisture to collect upon the windshield of the automobile involved in the accident. The right of the deceased in that case to walk where the law required him to walk was set forth, and it is further held that the deceased was not required to walk entirely off the roadway, or off the improved portion thereof. Where, under ordinary conditions, the law is well settled that it is the duty of a pedestrian to keep a lookout in front of him when walking upon the improved portion of a highway, yet, when the conditions present sudden emergencies by reason of the rapid approach of a negligently driven automobile, such facts must be considered in determining the question of liability.

As to the fourth assignment of error, we may add that the record shows that the plaintiff and the deceased were not living together; that for three or four years the de-

ceased had had difficulty in obtaining employment. The wife had returned to her mother's home in one of the southern states. It does not appear that the wife and the husband were estranged, or that any marital differences had caused their separation. Under these circumstances the cases cited by the respondent, to wit, *Gilmore* v. *Los Angeles Ry. Corp.,* 211 Cal. 192 [295 Pac. 41] , *Powers* v. *Sutherland Auto Stage Co.,* 190 Cal. 487 [213 Pac. 494], and *People* v. *Stokes,* 71 Cal. 263 [12 Pac. 71], sufficiently show that the plaintiff in this action was and is entitled to the damages awarded.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 20, 1937.